The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this honorable court may give their attendance and they shall be heard. God save the United States of America and this honorable court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The case today is United States v. Willie Richard Minor. Appeal number 20-1903. Attorney Pickett, please introduce yourself for the record and proceed with your argument. Good afternoon, your honors. Karen Pickett for the appellant Willie Richard Minor. Judge Barron, if I could ask to reserve five minutes of rebuttal time? You can have three. Three. Okay, thank you, your honor. So as I was preparing for the argument, I read through all the briefing and as your honors know, there's been plenty of briefing. I think each side has had four briefs. And I thought back to a time many years ago when I was clerking for Judge Benjamin Kaplan and one thing he used to always say to me because I had a tendency to ramble both orally and in writing. He used to cite to me a provision from, or a saying from, I think it's called Habakkuk 2, which is in the Old Testament. And it basically says, God said, write the vision and make it plain upon tablets so that he may run that readeth it. And I guess, your honors, the simple issue in this case to me is that the government was required to prove and the jury was required to find beyond a reasonable doubt that my client, Mr. Minor, knew he was convicted of a misdemeanor crime of domestic violence. I think it's important because as I keep reading, I think the government and I probably agree on more than we don't because obviously Mr. Minor stipulated to the underlying facts and I don't think he would argue that he had not been convicted of a misdemeanor crime of violence as defined in 921, I think it's 833. But he obviously has challenged and set forth jury instructions to ask the judge to do what was required, which was to instruct the jury that they had to find beyond a reasonable doubt that he knew he had been convicted of a misdemeanor crime of domestic violence. As we know, the judge instructed the jury on some of the definitional elements, but it's important to realize that a defendant under black letter constitutional law, the 5th and 6th Amendment, has a right to have the jury decide all material elements beyond a reasonable doubt. And we know from the statute that that's the element of the offense, that he has been convicted of a misdemeanor crime of domestic violence. That's set forth clearly in Rehafe, but I did want to bring the court's attention to a case that came out after the oral argument last year around this time. And it says that... Before you get to that, when you say that he was convicted of a misdemeanor crime of domestic violence, do you mean that he was... Your Honor, I want, and I hope it was clear in my papers, I believe that the jury had to be instructed on the specific statutory language, which they were not. And that is that the defendant knew that he had been convicted of a misdemeanor crime of domestic violence. Wait a minute, as defined by what? Well, I don't know that it's not, I don't know that it's ambiguous that a domestic crime, I mean a crime of domestic violence. And as the facts play out in this case, and as set forth in the panel opinion that I know has now been vacated, the question is, what did he know about that status? What did he know? Did he know that he had been convicted of a misdemeanor crime of domestic violence? And I would suggest that there were plenty of facts, and as the panel opinion found, a reasonable jury, if they had been instructed on that element, specifically on that element, as they were required to be, that there was plenty of evidence that Mr. Minor did not have the requisite mens rea, did not know that he had been convicted. Now, I understand if the case goes back, the judge may have to, oh, I'm sorry. Are you arguing that he should have been instructed on the individual elements that make up that status, or just on the status itself? Well, I'm arguing that they had to be instructed on the status itself. That's clear from Rehave. And I think it's confusing, but I think this section in Ruan, which explains what the court found in Rehave, should make it more clear, I hope. Well, below your instruction, you had a tiered request, as I read the record in the government's brief. You asked that the jury be told they have to find that he knew he'd committed the crime of domestic violence. You had a fallback position where you asked the judge to at least read the statutory definition of that. And then you had a fallback position that at least lists all the elements of that. And the district court judge rejected all of those, as I understand it. That's right, Your Honor. And I would say on appeal, and as I was going to say, if it gets sent back, I understand maybe the judge, and I don't know, this would be something for the government and trial counsel to figure out and for the judge to figure out, but it may be that he gives the instruction on the element and then goes on to give the statutory definition. As we know, the definition that he gave did not include everything that's listed in the definition. Let me ask you about that last point. Suppose the statute, instead of using the phrase, misdemeanor crime of domestic violence, simply said, who has been convicted in any court of a crime, I'm sorry, who had been convicted in any court of an offense that, and then it just had the element set forth in 33A. In that event, I assume you would say all you have to do is instruct on the elements, correct? That's true, Your Honor. And that would be, because it's listed in the statute, those would be the elements, because they're listed specifically in the statute. The question is, why would we think, given that here, the phrase, a court of a misdemeanor, domestic crime of violence, is just described by the statute itself as meaning those elements, why would we think Congress thought the name that it gave to the offense that's then described was something he had to know? Well, Your Honor, basically, when you think about mens vrea, you have to apply the knowing element to the exact element of the statute. What I'm asking is whether the element is the label and the elements that the label describes of the offense, or whether it's just the offense, and that you could do it by mentioning just the name, but it's the equivalent to name just the elements. There's no difference between those two, which I take it to be the government's position. What's wrong with that? What's wrong with that is that, well, first of all, there's been some cases that have said that the parts don't make up the whole. No, I know that, but there's no case that I'm aware of that has ever held that in a situation like this, where there is a label, and then the statute itself says this label means X, that you must instruct on the label and the elements, or even just the label rather than the elements, which are the equivalent. Your Honor, I would dispute that the language, specifically within 922G, is a label. It's actually the element itself. It says, in any court of a misdemeanor crime of domestic violence, then it says, the term misdemeanor crime of domestic violence means an offense that. So to me, that just sounds like it's saying those words mean the exact same thing as what follows the that. So there'd be no difference between instructing on those and instructing on the name. Well, again, that's a separate statute. The definition is contained in a separate statute. It's not referenced in 922G itself. What difference does that make? If the statute as a whole provides a definition of domestic, what difference does it make if we look elsewhere, if it's part of the general statutory scheme? Well, because the defendant, his mens rea is a subjective thing. And so what the courts have said is, if you looked at the statute, I'm not saying defendants look at the statute, but that's the element that they have to know. And so a reasonable person would say, in these circumstances, oh, no, I haven't been convicted of a misdemeanor crime of domestic violence. And that's his defense. Do you think the outcome then is different if that definition in 921A33A appeared in 922G9 itself? I do, Your Honor. Yes, I do. So there is a case, I will say. If we disagreed with that, is there any other reason why? So it means the whole point that 921A33A just is not within 922G9 itself? That's the argument? That would be it, Your Honor. But I also, if I could just read from Rouen, which was the point I was trying to make about how the Supreme Court has interpreted rehafe. So it says, it basically is describing its decision. This is in Rouen, by the way. It's describing its decision in rehafe, and it says, the latter subsection made it unlawful for people with certain statuses, i.e. being a felon or being in the country unlawfully, to possess a gun. We held that the first subsection's knowingly language applied to the status element. It calls it the status element in the second subsection. To convict under the statute then, the government had to prove that a defendant knew he had one of the listed statuses. And here, they specifically say the listed status is the statuses listed in 922G, etc. So, again, a defendant, for example, say it's a felony conviction, the statute defines it as a crime that's punishable by a year or more, but the defendant can still come in and say, oh, that was 10 years ago, and I went to court, and I didn't go to jail at all, so I had no idea. But in any event, you have to be instructed on the status itself, and the status is in the 922G. Referring back to my understanding of your point, in Reheath, you're making an analogy to Reheath. In Reheath, if the defendant had thumbed through the immigration laws, he would have found a definition of unlawfully present in the United States. It's in 8 U.S.C. 1182A9B2, which defines the elements of being unlawfully present in the United States. But the court didn't hold that knowing those elements, ipso facto, meant you were guilty. That's true. You just made the point I was going to make, which is unlawfully also has a definition. That's not in this provision, unless you're saying that the knowingly applies to the it shall be unlawful portion of the statute, which I thought everyone was disclaiming. I'm sorry. I'm not following. Maybe I interrupted you. Were you talking about unlawfully in the Reheath context? Yes, in the Reheath context. But there, the word is unlawfully, and that's what you had to know. Here, the relevant thing you have to know is a conviction for a misdemeanor crime of domestic violence. The question is, what do those words mean? If they mean the exact same thing as what 921A33A says, then you could know the very thing you're supposed to know, it's a misdemeanor crime of domestic violence, if you know everything that's in 921A33A, because they're the same. Again, Your Honor, I'm not trying to… Five minutes remaining. Five minutes. So, in any event, I believe that, and in the cases that I cite in my supplemental memorandum, and if you look at the model jury instructions, those words have to be in the instruction. Now, I'm not saying that they couldn't define it differently. You say those words mean misdemeanor crime of domestic violence? Yes. Suppose we disagreed with you on that point, and they thought that it was sufficient, so long as they instructed on the elements of a misdemeanor crime of domestic violence, drawing on the definition set forth in 921A33A. Was there then a problem with the instructions, or are you agreeing that there then was no problem? Well, again, I would say that there was a problem with the instructions because it didn't track A33 in a couple ways. One was the physical force. I'm sorry, I don't know the exact language. The other was that there's an interesting… Suppose we did both. Would you say it was error if we specifically said a misdemeanor crime of domestic violence meaning, and that was the instruction to the jury?  I don't believe so, Your Honor. That's what I was saying. That's not what happened here, and I do believe that maybe on remand the judge goes back and at least instructs the jury on the exact element and then defines the element. But if he's going to define the element, he has to include all the elements, including the one that Mr. Miner's NOLO plea had to be after knowing involuntary, and we know here that there's no colloquy. So in some ways I wonder why the government wants this because it's a very protracted definition. The case, I think it's the Seventh Circuit called Triggs, talks about how complicated this definition is and why a defendant may not… Before you go there, I just want to backtrack a second. Assume with me, and in assuming it you're not waiving anything. I just want you to assume. Okay. Assume with me that it would be a permissible instruction to refer only to the definition of a misdemeanor crime of domestic violence rather than to the label for it in the instruction, okay? And then you said there was a problem with the instruction and you referenced the force element. And I want to just talk to you for a moment about that portion of the instruction. What was wrong in your view with the portion of the instruction that concerned the force element independent of any concern about not referencing the label misdemeanor crime of violence? Well, if you're saying that the elements are the definition in 833, then a jury always has to be instructed on the elements. And Mr. Minor, although he probably would have stipulated to that, for the reasons I set forth in my brief, the jury still needs to be instructed on every material element. What about the instruction did not do that? The government defends the instruction on force did it because force means, as a matter of law, offensive touching. And so in spelling out what force means, that instruction defined the element. Is there nonetheless something wrong with the instruction? If it is wrong, what is wrong with the way that portion of the instruction reads? In my view, the jury needs to be instructed on all the elements at once. Including if you say it's just the definition. The other piece of the definition that I raised is that in order to obtain a conviction, you have to show that the prior misdemeanor conviction was a knowing involuntary one. I need an answer to Judge Barron's question. I'm sorry. I'm going to read you the instruction. And I want you to tell me what words are wrong with the instruction. It says, Third, that Willie Richard Minor knew that he'd been convicted of that crime, that he knew the conviction subjected him to incarceration of up to 364 days, that he knew the conviction was for causing bodily injury or loss of physical contact to another person. What's wrong with the instruction up to there? With causing bodily... What was... I'm sorry. Causing bodily injury or... That he knew the conviction was for causing bodily injury or offensive physical contact to another person. I thought that was not included in the instruction, which is why I raised it. I'm reading it from the instruction. Okay. Well, if that was included in the instruction, then I'm mistaken. You objected below to the exclusion of the term use of physical force. Oh, use of... Okay. Use of physical force. Because that's not within the definition of A33. That, again, is the judge interpreting the law, you know, the three Supreme Court cases. Right. And finding, as a matter of law, that he could include offensive contact. Yes. And if that is a legal question, then you withdraw the objection. No, because I still think that the elements of the offense, if they're only on the definition, need to be told explicitly to the jury. Okay. And just to be clear, though, you agree that this was an instruction. The phrase conviction was for doesn't cause you any concern. Conviction was for, no. Okay. And just to follow up, again, the other part of the instruction that's missing, that's relevant, would be we don't have any evidence that Mr. Minor entered into this, you know, plea knowingly and voluntarily. And if you look at the other cases from the other circuits, they're all plea cases. And, in fact, in Triggs, the defendant on a plain error standard was allowed to withdraw his plea because he had facts to show that he did not know that he was a domestic violence misdemeanor. And the facts that Mr. Minor... I'm sorry. Your argument about knowing involuntarily, and you're saying he did not know what he was pleading to knowing involuntarily, are you talking about the federal gun possession as opposed to the earlier misdemeanor case? I'm sorry, Your Honor. As opposed... In A33, it says the prior conviction. So you're referring to the prior conviction. Yes, prior conviction. There is no... Can you finish that sentence? Oh, sorry. There is no plea colloquy entered here. And just as an aside, in the other cases, even when there was a plea colloquy, if the judge didn't warn the defendant or didn't go through the elements, et cetera, they said that that was a basis to withdraw the plea. I'm talking about the prior conviction. Thank you, Your Honors. Any further questions from anyone on the panel? Thank you. Thank you. Thank you, Attorney Pickett. Please mute your camera and your audio. Attorney Handel, if you could please introduce yourself on the record to begin. Good afternoon, Your Honors. May it please the Court, Josh Handel for the United States. The Supreme Court's decision in Rehaif requires the government to prove that a defendant knew every fact necessary to place him within one of the categories enumerated in Section 922G. It does not require proof that he had analyzed and grasped the full legal import of those facts. And it certainly does not require proof that he was aware of the federal firearms prohibition or subjectively understood that he fell within its scope. Requiring the latter knowledge would displace the scienter element that Congress wrote and the Supreme Court recognized with a willfulness mens rea that neither Congress nor the Court intended. That outcome cannot be squared with pre-Rehaif scienter precedence, with Rehaif itself, with this Court's decision in Austin interpreting and applying Rehaif, or with the decisions of its sibling circuits doing the same. If there were any doubt, the facts of this case demonstrate how far off track the contrary approach would take us. No one disputes that Mr. Minor knew every fact necessary to qualify his prior conviction as a misdemeanor crime of domestic violence. His only contention is that he did not understand the scope of misdemeanor crimes of domestic violence as that term is defined for purposes of the federal firearms prohibition. But that is a mistake as to the scope of the prohibition. I'm sorry, Your Honor. When the Supreme Court and Rehaif said, in contrast, the maxim meaning ignorance of the law, does not normally apply where a defendant has a mistaken impression concerning the legal effects of some collateral matter, and that mistake results in his misunderstanding the full significance of his conduct, thereby negating an element of the offense. And then the Supreme Court further stated, a little later on, a defendant who does not know that he is an alien illegally or unlawfully in the United States does not have the guilty state of mind that the statute's language and purposes require. That's the portion of Rehaif that I'm just, keep having difficulty figuring out how to distinguish it from what we have in this case. Absolutely, Your Honor. So a couple of points in response to that. I think that Rehaif applied, it certainly applied a scienter element to section 922G, but the Supreme Court's decision did not purport to break any new doctrinal ground when it came to traditional scienter principles. In fact, it expressly and repeatedly invoked and relied on the earlier decision in Staples as kind of the grounding precedent here for applying the knowingly mens rea from 924A2 to the statuses listed in 922G. And Staples dealt with  How do you prove a defendant's knowledge of prohibited status? Now, granted in Staples, the status was the status of a weapon, and here it's the status of the person himself, but I don't think any of the reasoning differs materially between Staples and this case. And what the Supreme Court said in Staples is that we prove knowledge of status, we prove knowledge of a statutory classification by proving a defendant's knowledge of the factual characteristics that place him within that statutory classification, or in Staples, that place his weapon within that statutory classification. And that is exactly how this court has understood Staples in Tancoballes and Nieves-Castano. Let me interject and take you back to where Judge Thompson was asking you to focus for a moment. In Rehave, it was under section 5, 922G5, where being an alien, you are illegally or unlawfully in the United States. That's what you have to know. And unlawfully in the United States, under the Immigration Code, just flip a little further in, is defined. It's a defined term. It tells you what facts establish that you're unlawfully. And it's being in the United States after the expiration of the period of stay, i.e. a visa, authorized by the Attorney General, without being admitted or paroled. The defendant there clearly knew all those facts. He knew his visa had expired. The court said it. So he knew the facts that met the definition. But the Supreme Court held he needed to know he was unlawfully in the United States. So why isn't that analogous here? Sure, crime of domestic violence, like any other status, has a definition and has elements. But the statute doesn't say that you just need to know some facts that would make it a crime of domestic violence. You need to know it's a crime of domestic violence, just like you need to know you're unlawfully in the United States. There's a legal element in Rehave, just as there is here. Well, Judge Kayada, first, respectfully, I would push back a little bit on that characterization of Rehave. The Supreme Court never said that the defendant in that case clearly knew all the facts that rendered him unlawfully in the United States. In fact, that question was a fact question that was controversial between the parties in the district court. It never made it in front of the jury because at the time, pre-Rehave 11th Circuit precedent deemed knowledge of status or knowledge of the facts that constitute status to be categorically irrelevant to the 922G, 924A2 question. So let me make sure I'm clear on you saying that. Are you saying that we should read Rehave as saying that if, in fact, he knew his visa had expired and more than 30 days had passed, that was all the government needed to prove, the underlying facts of unlawfulness, and the government did not need to prove that he knew he was unlawfully in the United States. Is that what you're saying? So, Your Honor, as we set out in our supplemental en branc brief, that is certainly our frontline position, that we have to prove knowledge of the facts that render a defendant illegally or unlawfully in the country. We think that's consistent with the examples that the Supreme Court offered in Rehave of hypothetical, innocent, non-culpable defendants. The example in the immigration context that the Supreme Court offered was an alien who was brought into the United States unlawfully as a small child, and therefore may not realize she was not born here or was never authorized to enter. That is plainly a misapprehension as to a collateral fact of the defendant's own life or history. It is not a misapprehension as to the scope of the prohibition. We think that's also consistent with the Ninth Circuit's decision in United States v. Gere, which held that the government had to prove the defendant's knowledge of the factual characteristics that undergird the statutory classification rather than knowledge of the classification itself. But look, I totally understand that for some judges on this court, that might be a little bit of a tough sell for us. And I think that even if you disagree with us on that point, even if you think the government has to prove knowledge of unlawful immigration status, that still does not compel adopting Mr. Minor's theory of the requisite knowledge for conviction under G9. Under G5A, under the statutory provision that was at issue in Mr. Ray Haif's case, a defendant doesn't need to, and in fact could not, consult the federal firearms prohibition in order to ascertain his immigration status. Immigration is defined by statutes and regulations that operate entirely independently from the federal firearms prohibition. By contrast, in G9, the phrase, misdemeanor crime of domestic violence, is defined solely for the purposes of the federal firearms prohibition. It is important. It is material solely for the purposes of the federal firearms prohibition. And therefore, allowing a mistake as to the bounds of a misdemeanor crime of domestic violence to preclude liability under the federal firearms prohibition is equivalent to allowing a mistake about the prohibition itself to preclude liability. And that is converting this into a willfulness offense, which Ray Haif and Austin Let me just break down a middle step there. So, on this argument that you're just setting forth in response to Judge Chiara, that's assuming, in Ray Haif, you'd have to prove knowledge of being there unlawfully. Or, at least, even if you didn't focus on the word unlawfully, knowledge of being there in violation of whatever specific provision makes it a violation to be out of status while in the country. Okay. Taking that as a given, I just want to see how that applies here textually and why you say that means, because I take it the government's position is not that it's enough to simply instruct that the defendant had to know facts that would suffice to satisfy the elements of the predicate offense, but that he had to know he was convicted of an offense with those elements. Correct? Yes, that's correct. If I'm following your question, he has to know, he has to be aware of his prior conviction, he has to know that it carried misdemeanor penalties, he has to know that it was for a violent crime, and he has to know that the victim of the offense was his spouse at the time or some other specified domestic relation. Yeah, when you say violent offense, though, I think that's saying he had to know the offense had the element of the use of force as defined legally as offensive touching. So, Your Honor, I think that's right at a certain level. I don't think it's necessary for liability to attach that we prove a defendant had a sophisticated understanding of what exactly a legal element is. I agree with, well, he has to know the offense, I don't know what you mean by had to have a sophisticated knowledge of the element. Sure, if I could say a little bit more on that, if you wouldn't mind, yeah. I think he has to know that the crime, the actual crime, the offense, not the offense conduct, but the offense itself to which he was either pleading or was being tried to a jury, that that required the use of force. Which is a way of saying, how about if I put it this way, that the crime, he could only be guilty of that crime if the jury found him guilty beyond a reasonable doubt of having used the kind of force that equates to offensive touching. Yes, Your Honor. Yes, okay. Government agrees on that, so, why then, given that you've agreed on that, and now for purposes of this colloquy, we're assuming Rahafe requires proof of unlawful knowledge, why do you not also have to know that the crime that you committed not only has those elements as defined in 921A33A, but also, why do you not also have to know it bears the label of a misdemeanor crime of domestic violence? Because all of those elements are aspects of the prior conviction that are totally collateral to, they are not intrinsically related to the federal firearms prohibition. The label, the statutory term of art that Congress has applied when it bundled those elements together into a basket and imposed a coterminous prohibition, those inform the bounds of the federal firearms prohibition. Is that a way of saying that the status is being a person convicted of a certain offense? And then there's just a question about how do we define what that offense is? Is it defined by the name that's given to it, or by the elements set forth in the federal statute? Whereas in Rahafe, the question is, what is the status? Well, the status is knowledge of being unlawfully in the country. You can't know that simply by knowing certain things about being in the country. You'd have to know it was illegal to have those things and be in the country, right? I think, yes. I think that's an accurate statement of the distinction between those sub-provisions. Five minutes remaining. Five minutes. Thanks, Dan. I think Judge Helpe has a question. Yes. I want to point out before I ask the question, the specific subsection here, subsection nine, was enacted in 1996. The rest of the statute dates back to 1986. So my question is, does that have any effect on how we should analyze this? Rehife goes to the subsection five, but that's, again, from 1986. And if you look at section nine, you look to the congressional findings and the purpose. Does that in any way support your position or not support your position? Well, Your Honor, unsurprisingly, I think it supports our position. I would say that I think there's a number of different things at play here. For one thing, over the course of the federal firearms prohibition, at a certain point, Congress appended the adverb knowingly to section 924A2. That predated the addition of G9 in the National Firearms Act. And I think that, you know, as the Supreme Court told us in Rehife, Congress, when it appended the adverb knowingly in 924A2, it meant to apply knowingly to the status in all the sections in 922G. And I think it is exceedingly unlikely that if, you know, Congress had thought that it was adopting Mr. Minor's understanding of the requisite mens rea here that 922G9 would have done any work at all because there are, you know, very, very few defendants who are able to, you know, consult the relevant statutory provisions here, perform a desk camps analysis on their statute of conviction, and come to a sophisticated legal understanding that they fall within the bucket covered by 922G9. I also would point out something that I believe we highlighted in our supplemental en banc reply brief, which is that when Congress was considering G9, there was a proposal that it only applied to defendants who had been put on notice at the time of their predicate conviction that this would impose a firearms disability, and Congress expressly rejected that proposal. It did not want to limit this to only persons who had been put on notice, and I think that that, again, confirms that, you know, Congress was focusing on this as kind of a garden variety scienter requirement that requires the government to prove that you knew the factual characteristics that brought you within the statutory classification, not that you had any special notice or awareness of the statutory classification itself. It is exactly the same as Staples. The Supreme Court has never overruled Staples. It has never departed from Staples. This Court certainly took Staples at face value in Tanco Baez, and I still have not heard, you know, any explanation for how Mr. Minor's approach to the requisite mens rea here is consistent with the Supreme Court's holding in Staples that you prove knowledge of the statutory classification by proving knowledge... Sorry, Your Honor. Did you... Did you have a question? Yes, I do. As I read your brief, you answered a series of questions. You then suggested some others, but I thought I read that you were saying if the majority opinion of... now withdrawn were sustained, that it would have implications not just for this domestic crime of domestic violence, but for all of the other firearm prohibition categories, including the machine gun prohibition. Was that, in fact, part of your argument here? Well, absolutely, Your Honor. You know, I don't know that it's kind of strictly within the four corners of the question presented to the en banc court, but I think that because Nieves-Castano and Tonko-Baez both took Staples at face value and the panel majority opinion said that Staples didn't mean what it said because the argument that the Supreme Court adopted into its holding or an additional argument was never put forward, I think that this court would be compelled to overrule Tonko-Baez and Nieves-Castano and whatever other circuit precedents have relied on kind of the face value reading of Staples. I would, you know, point out that I'm not aware of any circuit in the country that has read Staples to mean other than what it says, which is that a statutory classification is informed by the factual characteristics that make up that statutory classification. On page four of our brief, of our supplemental en banc brief, footnote one, we pointed out that the petitioner Staples actually did put forward exactly the argument that, you know, he needed to be, that the government needed to prove that the defendant knew he possessed a firearm within the meaning of the act. And the Supreme Court did not adopt that argument. The Supreme Court adopted the argument that it is sufficient to prove knowledge of a statutory classification by proving knowledge of the factual characteristics placing the defendant within that statutory classification. I think the same reasoning applies here. I see that I've run out of time, so if the court has any further... I'd like to just direct your attention back to this instruction issue that I was talking to your, to the defendant's counsel about. And the part that I want you to focus on, which gives me some concern, is the instruction says, with respect to the use of force element, and this is assuming that you don't have to instruct on the label, it's enough to instruct on the elements as defined in 921. With respect to force, as I understand it, the district court's position is that it didn't use the word force because it was entitled as a legal matter to define force in the way that it's been defined legally, and that's why it refers to causing bodily injury or offensive physical contact with another person. And assuming that's correct, the part that concerns me is that it doesn't say that the conviction was for an offense with an element of causing. It simply says that the conviction was for causing. To me, that reads like an instruction that a juror could read as saying, I only have to find conduct, not knowledge of the element of the offense. What's your answer to that? Well, Your Honor, I don't understand that to have been the gravamen of Mr. Minor's objection in the district court. It certainly is not... That's fair. That's fair. So if maybe we're on plain error, maybe it's waived. But in terms of trying to give guidance to district courts, I take it, given your position that you have to instruct on the element, that the proper instruction here would be clear in saying that the conviction was for an element of an offense of causing bodily injury rather than as it's phrased here. Your Honor, we would have no objection if in providing guidance to district courts in this circuit... Can I interject? There are different ways of understanding what is being asked. One is, was it error for the district court not to have rephrased it? The other is, just as a precatory matter, would it be a good idea to rephrase it? I don't want you to confuse your answer between those two different questions. First, was it error for the court... Let's put aside waiver and plain error. Was it error for the court not to have rephrased it as Judge Barron just suggested? Your Honor, I do not believe it was error. It was certainly not prejudicial error. As this court said... Before you get to prejudice, why is it not error? Your Honor, I believe the jury instructions here informed the jury of the substance of the charge. Just speaking, this particular phraseology, does the statement a conviction for causing equate to the statement a conviction for an offense with an element of causing? Your Honor, I think that the best way to read conviction for means a conviction for an offense of. I think that there is potentially another way to read conviction for, which means conviction for an offense... Does that mean if a defendant objected to this on the ground that it was confusing, it would be error for the judge not to make it clear? Your Honor, again, I think that if this had been an issue that was controverted in the trial court and the defendant had asked for a clearer instruction on this particular element of the definition of misdemeanor crime of domestic violence, perhaps it may have been erroneous depending on what instruction the defendant actually requested. If the defendant had put forward a request for an instruction that precisely laid out exactly what the forced element meant and the government said that's wrong for X, Y, and Z reasons and the district court sided with the government, then perhaps there may be error there. It's a little bit hard to hypothesize that because that is not what happened in the district court. This was not the gravamen of the defendant's objection. I just want to point out what this court said. Could I just follow up on that, though? And I'm reading from your supplemental en banc brief, but you say this in various places throughout your briefing that the knowledge that a defendant must have includes, one, the defendant's prior offense. I'm at page 18 of your supplemental en banc brief. But then, two, that that offense, quote, had as an element the use or attempted use of physical force or the threatened use of a deadly weapon. So, to circle back to the question of the wording of this instruction, which doesn't discuss an element, but discusses that the conviction was for, I understood from your briefing that you also take the position that the element is what has to be instructed. So, Your Honor, that is correct. As I believe I was saying to Chief Judge Barron earlier in the argument, we don't think that it is necessary for a defendant to have, you know, a sophisticated legal definition or understanding of how crimes are broken into elements. We think that what the government needs to prove on that part of the misdemeanor crime or domestic violence definition is that a defendant knew that his predicate offense was necessarily violent. That it necessarily involved the use of force or the slightest offense of touching. Not his conduct. His offense. The offense of conviction. That's correct. If I heard you right, you recognize an ambiguity, or you don't dispute that there's an ambiguity of whether the formulation conviction for causing is potentially ambiguous as to whether that's saying the conviction was for conduct rather than the conviction was for an offense that had a certain type of quality. I think my answer was that the best reading is that it's for the offense that had that quality, but I think there is potentially a plausible reading that it was for the conduct. Again, I would point out this was not the objection that was presented below. As this court said in Simonovich, you will only reverse on instructional error if the misstatement or omission in the jury instructions was, quote, integral to an important point in the case, end quote, because I understand that Mr. Minor has never contested that he knew his conviction for assault involved the use of force against the person of another. There is certainly no prejudice with respect to that piece of the instruction, but we would have no objection if this court wants to modestly tweak that instruction as a precatory matter to give guidance to district courts going forward. Unless the court has further questions, I'll rest on our briefs and respectfully request you affirm the judgment below. Thank you. Thank you. Thank you, Counsel. At this time, if you could mute your camera and audio, and if Attorney Pickett could unmute her audio and video and come back on the record, introduce yourself back on the record for a three-minute rebuttal. Good afternoon, Your Honor. On rebuttal, I would say a couple of things. One is that I feel like the government is not happy, I guess, with what REHAFE itself says. And REHAFE itself says that the government has to prove that the defendant knew a point of law. And here, the point of law is the status listed in 922G that he had been convicted of a misdemeanor crime of domestic violence. And I'm sorry to belabor this because I know I keep arguing this, but it's just a simple point of law. It's exactly what REHAFE says, as confirmed in Ruan. And I understand, and I know we got amicus briefs, and I understand the government's position that Congress definitely wanted to keep guns out of the hands of people convicted of domestic crimes. I understand that, and we haven't disputed that. But there's another compelling interest, which is discussed in REHAFE, which is that the government has to prove certain elements if those elements are listed in the statute. And here, the listed elements that he knew he had been convicted of a misdemeanor crime of domestic violence. And there's important reasons for that. There's important policy reasons for that, which are listed in REHAFE, which is that we don't want to send somebody to jail for a lengthy time, as Mr. Minor already has been in jail, when he didn't have the mens rea of knowing that he had been convicted of a misdemeanor crime of domestic violence. Just so I follow on that practical point, which I understand the force of it, what would count as evidence that he knew it was a misdemeanor crime of domestic violence, given that label? What do you think would count as evidence of that? So, the government did introduce evidence of a tape, I guess, a videotape that was played at Mr. Minor's arraignment. I guess it's their sort of standard warning at arraignment that you can be convicted of a crime and lose your gun. And then I think they could cross-examine him as to certain things. You knew this was your wife. It's a factual question. On the particular thing about the label, this particular label, if he knew, suppose the state law offense was denominated domestic crime of violence, you're not saying that would count as knowledge that he knew the offense qualified as a misdemeanor domestic crime of violence under the federal statute, are you? It's different, but I would say that if he had been convicted, in fact, that's in the original now vacated opinion, if he had been convicted of a domestic crime, a crime of domestic violence, then we wouldn't have a leg to stand on because it would say it in the judgment. It would depend what the elements of that offense were, I thought was your position. Suppose the state law offense called something a domestic crime of violence that didn't involve any of the elements defined in 921. Just calling it that wouldn't show that he knew he'd been convicted of a misdemeanor domestic crime of violence for purposes of the federal statute. Well, then I think, Your Honor, and this goes back to my point, which is that the element itself is 922G. If the judge had given the instruction on the element and then gone through the definition, then it would be a different scenario, but that's not what happened here. Any further questions from anyone? No. Thank you very much. Thank you, Your Honors. That concludes the argument for today. This session of the Honorable United States Court of Appeals is now recessed. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.